FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 26

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PILCHUCK CONTRACTORS, INC., | No. 43327-3-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

Penoyar, J. — Pilchuck appeals the Board of Industrial Insurance Appeals' (Board) decision that the Department of Labor and Industries (Department) proved two violations by Pilchuck. Pilchuck argues that (1) the Department did not prove a prima facie case because it did not show that Pilchuck violated the Washington Administrative Code (WAC) standards or that Pilchuck knew of the violations, (2) even if the Department proved a prima facie case, the affirmative defense of employee misconduct applied, and (3) the Department erred in calculating Pilchuck's penalty.[1] There is substantial evidence that Pilchuck violated the applicable WACs and that it could have known of the violations through the exercise of reasonable diligence. Additionally, the Board did not err by finding that the employee misconduct defense did not apply because Pilchuck failed to establish that it had taken steps to discover and correct violations and that it effectively enforced its safety program in practice. The Board correctly

---

[1] The Department correctly states that Pilchuck did not assign error to any of the Board's findings of fact. Under Division II's general order 98-2, an appellant does not have to separately assign error to each challenged finding of fact as RAP 10.3(g) requires, but the appellant must still provide the verbatim text of the finding of fact. Pilchuck did not do so here; therefore, all of the findings are verities on appeal. *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006). This would effectively negate Pilchuck's appeal, but we exercise our discretion under RAP 1.2(c) and address the issues Pilchuck raised.

affirmed the Department's penalty calculation because there was substantial evidence that the Department considered all of the mitigating factors. We affirm.

## FACTS

The Department received an anonymous complaint about possible safety hazards at a Pilchuck jobsite. On June 16, 2009, a safety compliance officer for the Department, John Korzenko, visited the jobsite. When he arrived, he saw three Pilchuck employees working in a trench. The trench varied in depth, but the area where the employees were working appeared to be over eight feet deep. The employees were using a single hydraulic cylinder[2] and Finn boards[3] to shore the sides of the trench. There were "spoils pile[s]"[4] along the edge of the trench. Clerk's Papers (CP) at 166.

Korzenko inspected the site and spoke with the foreman, Jeff Heaton. Korzenko issued Pilchuck a citation with three serious[5] violations based on his observations at the jobsite on June 16. He issued the first violation, 1.1, because the trench lacked a safe exit. He issued the second violation, 1.2, because the spoils piles were not at least two feet away from the edge of the trench as WAC 296-155-655(10)(b) requires. He issued the third violation, 1.3, because the trench was not adequately protected from cave-ins as WAC 296-155-657(1)(a) requires. Trenches over six

---

[2] The record also refers to the cylinder as a "pump jack." CP at 259. The cylinder extends horizontally across the trench to keep the soil on the sides of the trench from caving in.

[3] Finn boards are fiberglass coated plywood boards that vertically line the walls of the trench. The hydraulic cylinders push up against the boards to shore the sides of the trench.

[4] A "spoils pile" is a pile of material excavated from the trench. CP at 165.

[5] A violation is "serious" if "there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace." RCW 49.17.180(6).

feet deep require two hydraulic cylinders for shoring, and this trench, which was at least eight feet deep, only had one cylinder. The Department penalized Pilchuck $9,450—$3,150 per violation.

Pilchuck appealed the violations to the Board. At the hearing, Pilchuck's safety director testified that Pilchuck ensures compliance with its trenching and excavation safety program by holding safety meetings, providing safety trainings and orientations, providing the proper tools and techniques, and conducting field inspections. He also testified about Pilchuck's disciplinary policy, explaining that the method of discipline varied by circumstances and that it could be anything from a written or verbal warning to termination. He stated that Heaton was given a written warning for the violations at issue here.

Korzenko also testified and explained how he reached the penalty amount for each violation. He stated that he considered the condition of the soil, the amount of time the employees were exposed to the hazards, the sloughing of materials on the trench walls, and the lack of adequate shoring. He said that he also considered the employees' training, Pilchuck's safety program, the presence on the jobsite of a competent person,[6] and the adequate shoring in some parts of the trench.

After the hearing, the industrial appeals judge (IAJ) vacated violation 1.1 and affirmed violations 1.2 and 1.3. The IAJ found that the spoils piles were too close to the trench, the shoring in the trench was not adequate for the depth, and Pilchuck could have known of the violations "with the exercise of reasonable diligence." CP at 51 (FF 6). The IAJ also rejected Pilchuck's affirmative defense of employee misconduct, finding that it was not taking adequate

---

[6] A competent person is "an individual who is capable of identifying existing and predictable hazards or working conditions that are hazardous, unsanitary, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." CP at 379.

3

steps to discover safety violations or effectively enforcing its safety program. The Board adopted the IAJ's decision and order. Pilchuck appealed to the superior court, which affirmed the Board. Pilchuck now appeals to this court.

## ANALYSIS

### I. STANDARD OF REVIEW

We review the Board's decision directly, based on the record before the agency. *Mowat Constr. Co. v. Dep't of Labor & Indus.*, 148 Wn. App. 920, 925, 201 P.3d 407 (2009). We review the Board's findings to determine if they are supported by substantial evidence in the record. RCW 49.17.150(1). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *Mowat Constr. Co.*, 148 Wn. App. at 925.

### II. VIOLATIONS

Pilchuck first argues that the Board erred by finding that the Department proved two serious violations. It argues that the Department failed to show that it violated the standards for spoils piles and shoring requirements and that it knew or could have known of the violations. Because there is substantial evidence that Pilchuck violated both standards and that it could have known of the violations with the exercise of reasonable diligence, we affirm the Board.

The Department has the burden of proving a violation. WAC 263-12-115(2)(b). To prove a serious violation, the Department must show that

> "(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition."

4

*J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 44-45, 156 P.3d 250 (2007) (quoting *Wash. Cedar & Supply Co., Inc. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2004)).

A.    Violation of WAC Standards

The Board found that the Department proved that Pilchuck failed to meet the requirements of both WAC 296-155-655(10)(b) and WAC 296-155-657(1)(a). These findings are supported by substantial evidence in the record.

WAC 296-155-655(10)(b) states that employees shall be protected from excavated materials by placing and keeping the materials at least two feet from the edge of excavations or by using retaining devices sufficient to prevent material from falling or rolling into excavations. Pilchuck argues that there is not substantial evidence that the spoils piles were less than two feet from the edge of the trench. We disagree.

The safety officer, Korzenko, testified that the spoils piles were right on the edge of the excavation. Heaton, the foreman in charge on June 16, testified that he knew the spoils piles were not two feet from the edge of the trench. Pilchuck asserts that the Finn boards extended above the height of the trench and provided protection from the spoils piles. But, Korzenko stated that the spoils piles reached higher than the Finn boards in the area where the employees were working. Thus, the boards were not sufficient to protect the employees from falling material, and there is substantial evidence to support the Board's finding that Pilchuck violated WAC 296-155-655(10)(b).

There is also substantial evidence to support the Board's finding that Pilchuck did not meet the shoring requirements. WAC 296-155-657(1)(a) states that employees in an excavation shall be protected from cave-ins by adequate protective systems designed in accordance with the

5

manufacturer's tabulated data.[7] Here, the tabulated data for the hydraulic cylinders Pilchuck used provided that for trenches over six feet deep, two cylinders were needed in each vertical plane. Pilchuck agrees that it was using only one cylinder in the trench, but it contends that the trench was not over six feet deep.

There is substantial evidence in the record that the trench was over six feet deep. Korzenko estimated the depth of the area where the employees were working at over eight feet deep.[8] He based his estimate on the height of the Finn boards, which are eight feet high, and on the height of a ladder inside the trench. He testified that the spoils piles on the edge of the trench made it even deeper. Heaton testified that the trench had to be over eight feet deep for the work they were doing and that a crew member had measured the depth of the trench at eight and a half feet earlier that day. The Board did not err by concluding that the Department proved violations of both WAC 296-155-655(10)(b) and WAC 296-155-657(1)(a).

B.    Employer Knowledge

Pilchuck next argues that the Board erred by finding that Pilchuck could have known of the violations. Because there is substantial evidence in the record that the hazards were in plain view and Pilchuck could have discovered them with reasonable diligence, this argument fails.

In order to prove a violation, the Department must show that the employer knew or, through the exercise of reasonable diligence, could have known of the violation. *J.E. Dunn Nw., Inc.*, 139 Wn. App. at 45. "'Reasonable diligence involves several factors, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be

_____

[7] "[T]abulated data" is the data that explains the proper use of shoring devises to prevent cave-ins. CP at 169.

[8] Korzenko did not actually measure the depth of the trench because he felt that it was unsafe to do so.

exposed, and to take measures to prevent the occurrence.'" *Erection Co., Inc. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 206-07, 248 P.3d 1085 (2011) (quoting *Kokosing Constr. Co. v. Occupational Safety & Hazard Review Comm'n*, 232 Fed. App'x. 510, 512 (6th Cir. 2007)). The Department may prove constructive knowledge of a violative condition in many ways, including evidence that the condition was readily observable. *Erection Co., Inc.*, 160 Wn. App. at 207. Knowledge or constructive knowledge may be imputed to an employer through a supervisory agent. *New York State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 105 (2d Cir. 1996).

Pilchuck argues that the Board erred because it automatically imputed Heaton's knowledge to Pilchuck. But the Board did not base its finding on imputed knowledge. Rather, it stated that Pilchuck knew of the potential for trenching hazards and it could have known of the actual hazards in this instance through the exercise of reasonable diligence. These statements are supported by the record. There is evidence that Pilchuck was aware of the potential cave-in hazards its employees faced. Pilchuck's safety manager testified that, to protect against cave-in hazards, Pilchuck trained employees on safety techniques, provided proper tools for excavating, held safety meetings, and inspected jobsites for compliance.

Additionally, there is evidence that the actual hazards were in plain view and that Pilchuck could have known of them through the exercise of reasonable diligence. *See Austin Bldg. Co. v. Occupational Safety & Health Review Comm'n*, 647 F.2d 1063, 1068 (10th Cir. 1981) (an employee welding in a precarious spot was easily observable and a diligent employer checking the safety of his workers would have discovered the hazardous conduct). The trench was in a conspicuous location; Korzenko testified that he could see the jobsite from the road. Once he entered the jobsite, it was obvious that the spoils piles were right at the edge of the excavation and that the trench was over six feet deep—given the length of the Finn boards and

the ladder—and had only one cylinder. Further, Pilchuck had time to discover the violations—the trench had been open for about two days before Korzenko came to inspect the jobsite. Because Pilchuck knew of the possible hazards facing its employees and because the hazards would have been readily apparent if Pilchuck had inspected the jobsite, the Board did not err by finding that Pilchuck could have known of the violations through the exercise of reasonable diligence.

III.    UNPREVENTABLE EMPLOYEE MISCONDUCT DEFENSE

Next, Pilchuck argues that, even if there was substantial evidence to support the violations, the Board erred by finding that the unpreventable employee misconduct defense did not apply here. Because Pilchuck did not carry its burden of proving that it took steps to discover and correct safety violations and that it was effectively enforcing its safety program, we affirm the Board.

Under RCW 49.17.120(5)(a), an employer may avoid liability for a violation by showing (1) a thorough safety program, (2) adequate communication of the program to employees, (3) steps to discover and correct violations of the safety program, and (4) effective enforcement of the safety program in practice and not just in theory. The burden of proving the affirmative defense is on the employer. *BD Roofing, Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 98, 111, 161 P.3d 387 (2007). Here, the Board found that Pilchuck had a thorough safety program in place and was adequately communicating the program to employees but it was not taking adequate steps to discover safety violations and was not effectively enforcing its safety program.

There is substantial evidence that Pilchuck was not taking adequate steps to discover and correct violations of its safety program. In *Legacy Roofing, Inc. v. Department of Labor & Industries*, 129 Wn. App. 356, 365, 119 P.3d 366 (2005), we affirmed the Board's finding that

8

the employer's steps to discover and correct safety violations were inadequate because its inspections were infrequent and employees were not consistently counseled or fined. Similarly, here, the Board stated that Pilchuck had not shown a sufficient system of safety checks or that its disciplinary system was clear to workers and strictly enforced. The record supports the finding that Pilchuck did not have a sufficient system of safety checks. The site superintendent who supervised the project walked off the job and was not replaced. The general superintendent, Marvin LaRue, who was managing three to four other projects at the same time, visited the jobsite only two to three times per week. Further, the safety manager testified that the discipline for violations depended on the circumstances, but he did not give any information that would clarify for workers what type of discipline would accompany certain actions. And, other than the written warning Heaton received because of the citation at issue here, Pilchuck did not provide any documentation that it inspected and disciplined employees for rule violation. If employees do not know what discipline, if any, will result, then the disciplinary process does not provide an effective tool for preventing violations.

There is also substantial evidence that Pilchuck was not effectively enforcing its safety program in practice. As discussed above, Pilchuck did not have frequent safety checks in place and its disciplinary system was unclear. The Board also noted that it was unclear who was responsible for disciplining employees when they violated safety rules.

There is evidence that Pilchuck was not taking adequate steps to discover violations of its safety program and was not effectively enforcing its safety program in practice. Therefore, the Board did not err by finding that Pilchuck failed to carry its burden of proving employee misconduct.

IV.    PENALTY CALCULATION

Finally, Pilchuck challenges the penalty calculations for the violations. Specifically, it argues that the Department did not consider all of the relevant factors when calculating the probability rate. Because the Department considered all of the factors, the Board did not err by affirming the Department's penalty calculations.

We review a penalty calculation to determine whether it was manifestly unreasonable or based on untenable grounds or reasons. *Danzer v. Dep't of Labor & Indus.*, 104 Wn. App. 307, 326, 16 P.3d 35 (2000). The Department calculates penalties for violations by multiplying the violation's severity rate—a measure of how serious of an injury may result—by its probability rate—the likelihood of an injury occurring. WAC 296-900-14010. Here, Pilchuck challenges only the Department's calculation of the probability rate. The Department considers a number of factors in determining the probability rate: frequency and amount of exposure, number of employees exposed, number of times the hazard is found in the workplace, employee proximity to hazards, working conditions, employee skill level and training, employee awareness of the hazard, the nature of the work, protective equipment use, and other mitigating or contributing circumstances. WAC 296-900-14010. Based on these factors, the Department assigns each violation a rate from one to six, with six indicating the highest probability of injury.

Here, Korzenko determined that the probability rate for both violations was three, which is a low-medium probability rate. The Board found that the penalty calculations were reasonable and correct.

Pilchuck argues that the Board erred by affirming the Department's probability calculations because Korzenko failed to lower the probability rate based on the employees' training, Pilchuck's safety orientations, the presence of a competent person, and the use of

shoring. But Korzenko testified that he considered all of those mitigating factors in determining the probability rate. He also testified that the rate "could have been higher" because of the soil condition, evidence of a fault line, and inadequate shoring. CP at 187. Therefore, the Board did not err by finding that the Department reasonably considered all of the factors and reduced the probability rate accordingly.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Johanson, A.C.J.

Bjorgen, J.